## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SUSAN B. LONG and<br>DAVID BURNHAM,<br><br>Plaintiffs,<br><br>v.<br><br>IMMIGRATION AND CUSTOMS<br>ENFORCEMENT and CUSTOMS<br>AND BORDER PROTECTION<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 1:14-cv-109 (APM)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## THIRD DECLARATION OF SUSAN B. LONG

I, Susan B. Long, declare as follows:

1.  As set forth in my first declaration in this case, dated November 13, 2014, I am one of the plaintiffs in this action and am co-director of the Transactional Records Access Clearinghouse (TRAC) at Syracuse University. I make this declaration based on personal knowledge.

2.  Over the course of the last decade as part of TRAC's immigration research initiative TRAC has made a number of Freedom of Information Act (FOIA) requests to ICE for technical documentation about its database systems, not all of which are at issue in this case. On a number of separate occasions over this period, a period that extends to and includes the requests that are the subject of this lawsuit, ICE has released significant amounts of technical documentation about the Enforcement Integrated Database (EID), the ICE Integrated Decision Support

database (IIDS) and other modules and related components. This technical documentation includes user's manuals to these modules, system design documents, system requirement documents, functional requirements documents, data conversion plans, descriptions of physical modules, entity relationship diagrams, database schema, data dictionaries, code translation tables, data management plans, and other technical documentation for various EID and IIDS modules. The technical documents ICE released also included a large amount of information referring to is preparation of "snapshots" and extracts. ICE also released vendor contracts with detailed descriptions of the work to be performed under the contract in the design, development and maintenance of the EID and its various modules and related components. The technical documents we have received from ICE appear to be among the very kinds of documents described in ICE's Supplemental *Vaughn* Index.

3.     An example of technical documentation we were provided is the 97 pages released in response to our October 18, 2010, request for technical documentation on the IIDS database, which is one of the subjects of this lawsuit. *See* Oct. 1, 2014, Pineiro Dec., ¶ 19 & Exh. 10. Three documents were released.

a.     The first document, consisting of a single page released in its entirety, identified the precise DBMS software (Oracle 10g, Version 10.2.0.4) being used by the IIDS. This page is found as Exhibit I of my November 13, 2014, declaration.

b.      The second document, comprising 64 pages, consisted of a series of large, color-coded, schematic diagrams displaying IIDS dimensions with a listing of the precise names of the fields (data elements) in each dimension with interconnecting arrows identifying the interconnections among these elements and dimensions. Slightly over half (33) of these 64 pages were released without redactions, while the remaining 31 pages each had a few data elements whose names were redacted of the many displayed on the page. An illustrative page of these schematic diagrams released in its entirety is found as Exhibit H of my November 13, 2014, declaration. An illustrative sample from the 31 pages of these schematic diagrams that included redactions is found as Exhibit U of this declaration.[1]

c.      The third and final document released was a copy of the IIDS Data Management Plan (DMP), Release 1.6. The DMP consisted of 32 pages and was released without any redactions. The DMP's Section 1.0, "Introduction," describes this document's contents as follows. "The Data Management Plan (DMP) describes data elements, definitions, and structures for the Immigration and Customs Enforcement (ICE)

---

[1] The listing of these 31 redactions makes up almost all of ICE's first *Vaughn* Index (the last entry concerns redactions to the nine-page document released in response to the request for information identifying "snapshots" and extracts). Each page is identified with its separate page number designated as its "Document ID." Exhibit U is identified as the first item in the first *Vaughn* Index, designated as "Document ID 2011FOIA619.000033."

Integrated Decision Support (IIDS) Data Warehouse. IIDS includes the following Data Marts: Apprehension (Arrest), Bond Activity, Detainer, Detention Day, Detention Facility Day, Detention, Detention Stay, Removal Case, Secure Communities (SC), and supporting tables. The database sources are the Enforcement Integrated Database (EID), Enforcement Alien Removal Module (EARM), Bond Management Information System (BMIS), Alien Criminal Response Information Management System (ACRIMe), SC Interoperability Controlling Agency Identifier (CRI) Master List, and Automated Biometric Identification System (IDENT)." Exact field names as well as text descriptions were provided for IIDS's data elements, and how these data elements were organized into tables that were linked together was described in its 32 pages.

4.     The DMP document was typical in providing not only exact database field names, but also including textual descriptions for the type of information each field contains. Database schema, also referred to as data dictionaries, are specific types of technical documentation that provide side-by-side tabular listings translating the database technical names into everyday English.

5.     Attached as Exhibits V, W, and X are illustrative pages from the database schema and code tables ICE released to TRAC under FOIA describing the EID's detention module. Exhibit V contains an excerpt from the section that lists the precise database name for each table along with a textual description of the

contents of that table, while Exhibit W contains an excerpt from the sections which list the precise database name for each field within a given table along with a textual description.[2] One class of tables described in the schema is referred to as code tables. A code table lists each code used to record information in a particular field along with a description of its meaning, together with the date when this code was first added to the table.[3] An illustrative example of contents from a code table, here the "DET_FCL_FUNCTION_TYPE_CDS" table, is shown in Exhibit X. Here we see that the code "CDF" indicates that the detention facility is a "Contract Detention Facility" while "IGSA" indicates the detention facility is being used under an "Intergovernmental Service Agreement."

6.      Prior to this litigation ICE had released to TRAC in response to its FOIA requests significant quantities of database schema and code tables for the EID and its related modules. Indeed, the October 1, 2014, Declaration of Fernando Pineiro (¶ 10) asserts that ICE "had provided [to TRAC] copies of the [database] schema and all code tables for the entire EID, including all of its modules, at the conclusion of its search for responsive records." ICE's assertion that it had released

_____

[2] Here there are also two additional columns. One describes the type of data ["Datatype"] in that field, such as a field containing a date ["DATE"], a numeric field containing up to some maximum number of digits [such as 10 in "NUMERIC(10)"], or a mixture of alphabetic characters or numbers up to some maximum length [such as 30 in "VARCHAR2(30)"]. An additional column indicates whether the field is always filled out ["NOT NULL"] or can be left empty ["NULL"].

[3] There are three additional fields which are always empty unless there has been a subsequent change in the code or its description.  In this example, there have been no recorded changes so the fields on the second page of Exhibit X are entirely empty.

the EID database schema and requested technical documentation in their entirety was the original justification ICE cited for administratively closing our October 13, 2010, request for database schema, code tables and other technical documentation on the EID. On appeal, the agency overturned its previous administrative closure of our request, and remanded for additional searches.[4] And it was the failure of the agency to carry out these additional searches that in part resulted to the current suit being filed. Database schema and code tables that were found as a result of the search conducted after suit was filed are included in ICE's Supplemental *Vaughn* Index.

7.   As the foregoing discussion indicates, ICE's contention that database schema and similar technical documents are subject to blanket withholding under FOIA because the release of such information creates unacceptable risks of circumvention of the law is inconsistent with its release of large quantities of such material before this lawsuit was filed. This lawsuit was originally necessitated not because ICE contended that database schema were broadly exempt, but because ICE's search for and production of that information was incomplete, in two major respects:

---

[4] ICE's Office of Principal Legal Advisor found: "Without completing a search for records responsive to the request, it cannot be determined whether or not additional records exist that relate exclusively to EID that would not have been uncovered in the search for each of the database's respective modules. As such, it is likely that additional responsive records may be found in locations the agency has not yet searched." October 1, 2014 Pineiro Dec., Exh. 7.

a.   First, because the table schemas we received covered only specific EID modules, rather than all parts of the EID, we believe the coverage is incomplete. For example, we did not receive table schema covering ICE's handling of Immigration Court proceedings, or schema for tables that track removal actions that carry out these court decisions ordering removal of noncitizens.[5] Yet, ICE attorneys are the officials that represent the government in Immigration Court, and ICE removal officers are responsible for carrying out the court's orders, including recently conducted raids to round up and deport mothers with children who were unsuccessful in their requests for asylum and have been ordered removed by immigration court judges.[6]

---

[5] Because we lack knowledge of the specific database tables and fields where the information is stored, our FOIA requests to ICE for data on these public proceedings and how many removal orders have been carried out have met with little success. ICE has administratively closed some requests claiming we have not identified the records with sufficient specificity to process our request. Yet when we submit FOIA requests for very specific items of information, such as data on the number of deportations that have taken place of noncitizens ordered removed by immigration judges, we are met with ICE claims that they do not track these actions, even though the information could readily be obtained from ICE's databases.

[6] *See U.S. plans raids to deport families who surged across border*, Wash. Post (Dec. 23, 2015), https://www.washingtonpost.com/politics/us-plans-raids-to-deport-families-who-surged-across-border/2015/12/23/034fc954-a9bd-11e5-8058-480b5722000062b4aae_story.html; *Raids target undocumented immigrants in Georgia, North Carolina and Texas*, USA Today (Jan. 4, 2016) http://www.usatoday.com/story/news/nation/2016/01/04/ice-raids-immigration-central-america/78265144/; *U.S. plans new wave of immigrant deportation raids*, Reuters (May 12, 2016), http://www.reuters.com/article/us-usa-immigration-deportation-exclusive-idUSKCN0Y32J1).

b.     Second, because new fields and tables are being added to the EID, while other tables and fields can be discontinued, the table schema we previously received do not incorporate recent changes. For example, using the table schema we received, we sought under FOIA specific data contained in 106 information fields from five of these tables. A lawsuit we filed seeking that data, *Long and Burnham v. ICE*, No. 1:12-cv-01725 (D.D.C. 2012), proved largely unsuccessful because changes had subsequently occurred in the tables where the information was being stored. Because we had relied on the schema to be accurate, our lawsuit came up largely empty since most of the named tables and fields did not exist now under those names. Similarly, because we cannot identify precisely where the data are currently being stored without updated table schema, subsequent FOIA administrative requests have proven largely unsuccessful in obtaining this information.

We note that ICE's Office of Primary Legal Advisor that handles FOIA administrative appeals found that our appeals regarding the completeness of the search for and production of database schema had merit and remanded for further searches.[7] The agencies' failure to provide a further response following that remand led to the filing of this lawsuit.

---

[7] *See* Oct. 1, 2014 Pineiro Dec., Exh. 7.

8.     ICE admits that "descriptive terms for fields of information" in contrast to the database "specific field names" can be released, and when this is done "database security is not compromised." Jan. 12, 2015, Wilson Dec. ¶ 8. As I have outlined above, the technical documentation described in ICE's Supplemental *Vaughn* Index is replete with descriptions of the fields of information and because this information can be released without database security being compromised, there is no basis for its continued withholding.

9.     Among the large quantities of technical documentation described above in this declaration, the names and titles of officials and the offices responsible for specific roles or for activities or actions being carried out are often listed, along with contact information such as a phone number or email address. Outside of this lawsuit, ICE has regularly released this information to us after redacting the email address and the last four digits of the phone number. An illustrative example of FOIA releases of the names of such individuals is shown in Exhibit Y.

9.     Plaintiffs' March 5, 2013, appeal of ICE's response to our September 21, 2012, FOIA request for records identifying any extracts and snapshots prepared from the EID over the last 12 months lists at least sixteen categories of EID extracts referred to in various Privacy Impact Statements published by ICE, as to which ICE had provided no information. Oct. 1, 2014 Pineiro Dec., Exh. 16. Defendant has not as yet provided any records that would confirm whether or not these extracts were made during the last 12 months. Release of the information identifying and referring to the frequency of these continuing releases can hardly

impinge database security since these extract have been disclosed in the agency's own public Privacy Impact Statements. The disclosure of this information, however, at minimum would indicate whether or not the Privacy Impact Statements accurately reflect current practices, or whether current practices are not in conformity with ICE's published Privacy Impact Statements. For example, the records sought would reveal whether some extracts are no longer being made and whether extracts not listed are now being made. Either of the latter two situations would indicate that the agency has not kept its Privacy Impact Statements updated as required by the 1974 Privacy Act. The public is clearly entitled to be able to monitor the agency's compliance with this important statutory requirement.

Pursuant to 28 U.S.C. § 1746, I hereby certify under penalty of perjury that the foregoing is true and correct.

Executed in Syracuse, New York on May 19th, 2016.

Susan B. Long

# EXHIBIT U

Third Declaration of Susan B. Long

*Long v. Immigration & Customs Enforcement*

No. 1:14-cv-0109 (APM)



Yellow = ETL working table
Grey = Dim table from DSSSTAR
Turquoise = New Dim table
White = Fact table

2011FOIA0619.000033

# EXHIBIT V

Third Declaration of Susan B. Long

*Long v. Immigration & Customs Enforcement*

No. 1:14-cv-0109 (APM)

## Table

| Table | |
|---|---|
| **Name** | **Comment** |
| ADDRESSES | A set of time and/or spatial referents enabling physical navigation, communication, or relative positional orientation, in association with a PARTY or INCIDENT of interest to U.S. immigration, customs, or border transit authorities. |
| AGENCY_CDS | A U.S. federal immigration and customs enforcement operating area or site.  Source: Data is based on information from LOCY table. |
| AGENCY_DETENT_FAC_ROLES | A relationship between a U.S. federal immigration and customs enforcement organization and a site with resources for the temporary custody or restraint of persons, based on an organizational relationship or behavioral expectation.        SHORT FORM:  A relationship or expected behavior that characterizes an association between an AGENCY_TYPE and a DETENTION_FACILITY. |
| AGENCY_FACILITY_ROLE_CDS | A category of a relationship that may occur between a U.S. federal immigration and customs enforcement organization and a site with  resources for the temporary custody or restraint of persons, based on an organizational relationship or behavioral expectation.  SHORT FORM:  A relationship or expected behavior that may characterize an association between an AGENCY_TYPE and a DETENTION_FACILITY. |
| AGENCY_TYPES | An association of a site location and an organizational function that constitutes all or part of a U.S. federal immigration and customs enforcement organization.  Source: Data is based on information from LOCY table. |
| CIVILIANS | A person of interest to, or associated with, U.S. federal immigration and customs authorities. |
| CLASSIFICATION_LEVEL_CDS | A category of status that characterizes the propensity of a person to violate the law and/or behave in ways that are physically harmful to himself or others. |
| CONTRACT_TYPE_CDS | |
| DAMAGED_PROPERTIES | A possession that has been harmed. |
| DET_FCL_FUNCTION_TYPE_CDS | A category of roles or expected behaviors or processes for a site with resources organized for the temporary custody or restraint of persons. |
| DET_FCLTY_CONTRACTS | A legal agreement for goods or services related to a site with resources organized for the temporary custody or restraint of persons. |
| DET_FCLTY_INSP_CAPABILITIES | An assessment of ability to safely and lawfully detain PERSONS at a site with resources organized for the restraint and custody of the same, as determined by an examination for custodial suitability.  SHORT FORM:  An assessment of ability to safely and lawfully detain PERSONS at a DETENTION FACILITY as determined by an inspection. |
| DET_FCLTY_INSP_RATING_CDS | A category of qualitative assessment or grading resulting from an examination of the structures, equipment, personnel, procedures, and other components of a site with resources organized for the temporary custody or restraint of persons in order to determine suitability for the custodial function.  SHORT FORM:  A category of statuses that are a grading system for results of inspections of DETENTION_FACILITIES to determine suitability for detention operations. |
| DET_FCLTY_INSP_RENOVATIONS | A set of projected or achieved goals for a site with resources organized for the temporary custody or restraint of persons as determined by a custodial suitability examination.  SHORT FORM:  A set of projected or achieved goals for a DETENTION_FACILITY as determined during an inspection. |
| DET_FCLTY_INSP_TEAMS | An association of a PERSON assigned a specific function, in conjunction with a specific immigration enforcement organization and a site with resources organized for the temporary custody or restraint of persons, for the purpose of custodial suitability examinations.  SHORT FORM:  An association of a PERSON assigned an inspection role for a specific inspection of a DETENTION FACILITY in conjunction with the cognizant immigration enforcement organization. |
| DET_FCLTY_INSP_USAGE_CDS | |
| DET_FCLTY_INSPECTIONS | An examination of the structures, equipment, personnel, procedures, and other components of a site with resources organized for the temporary custody or restraint of persons, in order to determine suitability for the custodial function.    SHORT FORM: An inspection of a DETENTION_FACILITY to determine its suitability for custody of PERSONS. |
| DETENT_DETAINER_LIFT_CDS | A category of reason used to justify cancelling a request that another agency holding a person transfer custody of that person to immigration and customs authorities. |
| DETENT_FCL_ALN_CLS_CDS | DELETION CANDIDATE DUE NON-USE, NO FK CONNECTIONS. |
| DETENT_HEALTH_CDS | A category of physical and/or mental condition that may apply to a person. |
| DETENT_REL_RSN_CDS | A category of cause for termination of custody that may be applied to a person who is restrained by U.S. authorities. |

# EXHIBIT W

Third Declaration of Susan B. Long

*Long v. Immigration & Customs Enforcement*

No. 1:14-cv-0109 (APM)

## Column(s) of "DET_FCL_FUNCTION_TYPE_CDS" Table

| Name | Datatype | Null Option | Comment |
|------|----------|-------------|---------|
| dfftc_cd | VARCHAR2(5) | NOT NULL | An alphanumeric value indicating a category of roles or expected behaviors or processes for a site with resources organized for the temporary custody or restraint of persons. |
| dfftc_desc | VARCHAR2(80) | NOT NULL | A standard English word or phrase indicating a category of roles or expected behaviors or processes for a site with resources organized for the temporary custody or restraint of persons. |
| dfftc_close_dt | DATE | NULL | A standard calendar date and time when the value and associated description in this record is retired and is no longer available for use with new records. |
| dfftc_create_by | VARCHAR2(30) | NOT NULL | A userid indicating the creator of this record; generally this is a person, but on occasion it may be an organization, program, module, or application name. |
| dfftc_create_dt | DATE | NOT NULL | A standard calendar date and time when this record was initially inserted into the database. |
| dfftc_update_by | VARCHAR2(30) | NULL | A userid indicating who or what last changed this record; generally this is a person, but on occasion it may be an organization, program, module, or application name. |
| dfftc_update_dt | DATE | NULL | A standard calendar date and time when the value and associated description in this record is retired and is no longer available for use with new records. |

## Column(s) of "DET_FCLTY_CONTRACTS" Table

| Name | Datatype | Null Option | Comment |
|------|----------|-------------|---------|
| dfc_id | NUMERIC(10) | NOT NULL | A system-generated number uniquely identifying an instance of a legal agreement for goods or services related to a site with resources organized for the temporary custody or restraint of persons. |
| dfc_dtf_id | VARCHAR2(7) | NOT NULL | An alphanumeric value indicating a site with resources organized for the temporary custody or restraint of persons, which custody agency is party to a legal agreement for goods or services related to the custodial function. |
| dfc_contract_nbr | VARCHAR2(80) | NOT NULL | A numeric value indicating the specific intrument that is a legal agreement for goods and services affecting a site with resources organized for the temporary custody or restraint of persons. |
| dfc_ctcd_cd | VARCHAR2(1) | NOT NULL | An alphanumeric value indicating a category of legal agreement for goods or services related to a site with resources organized for the temporary custody or restraint of persons. |
| dfc_begin_dt | DATE | NOT NULL | A standard calendar date and time when a legal agreement for goods or services related to a site with resources organized for the temporary custody or restraint of persons. |
| dfc_expiration_dt | DATE | NULL | A standard calendar date and time when a legal agreement for goods or services related to a site with resources organized for the temporary custody or restraint of persons. |
| dfc_daily_rate_amt | NUMERIC(10,2) | NULL | A monetary value of compensation per 24-hour period paid pursuant to a legal agreement for goods or services related to a site with resources organized for the temporary custody or restraint of persons. |
| dfc_other_charge_amt | NUMERIC(10,2) | NULL | A monetary value representing compensation paid goods and services otherwise not specified in this table, pursuant to a legal agreement for goods or services related to aa site with resources organized for the temporary custody or restraint of persons. |
| dfc_total_amt | NUMERIC(10,2) | NULL | A monetary value representing the aggregate of all compensation paid pursuant to a legal agreement for goods or services related to a site with resources organized for the temporary custody or restraint of persons. |

# EXHIBIT X

Third Declaration of Susan B. Long

*Long v. Immigration & Customs Enforcement*

No. 1:14-cv-0109 (APM)

| DFFTC_CD | DFFTC_DESC | DFFTC_CREATE_BY | DFFTC_CREATE_DT |
|---|---|---|---|
| SPC | Processing Center | EID | 01-25-2007 03:32 PM |
| CDF | Contract Detention Facility | EID | 01-25-2007 03:32 PM |
| IGSA | Intergovernmental Service Agreement | EID | 01-25-2007 03:32 PM |
| FOS | Field Office Staging | EID | 01-25-2007 03:32 PM |
| PCS | Processing Center Staging | EID | 01-25-2007 03:32 PM |
| CBOS | CBP Staging | EID | 01-25-2007 03:32 PM |
| OFOS | OFO Staging | EID | 01-25-2007 03:32 PM |
| ORR | Office of Refugee Resettlement | EID | 01-25-2007 03:32 PM |
| MED | Medical | EID | 01-25-2007 03:32 PM |

DFFTC_UPDATE_BY   DFFTC_UPDATE_DT   DFFTC_CLOSE_DT

# EXHIBIT Y

Third Declaration of Susan B. Long

*Long v. Immigration & Customs Enforcement*

No. 1:14-cv-0109 (APM)

EADM User Manual                    ~~SENSITIVE BUT UNCLASSIFIED~~

## 1.3     *Key Project Personnel*

The following are key points of contact on this project:

### Key Project Personnel

| Name | Title | Organization | E-mail | Telephone |
|------|-------|--------------|--------|-----------|
| Raj Vellore | Office of the Chief Information Officer (OCIO) Director of DRO Branch | ICE/OCIO | b6 | (202) 732- b6 |
| Kathy Krause | EADM IT Project Manager | ICE/OCIO | b6 | (202) 732- b6 |
| David Callender | DACS Project Manager | ICE/OCIO | b6 | (202) 732- b6 |
| Joe Cummings | EABM / User Account Management (UAM) Utility IT Project Manager | ICE/OCIO | b6 | (202) 732- b6 |
| Patrick Contreras | EADM System Representative | ICE/DRO | b6 | (520) 868- b6 |
| Sanjeev Duggal | Development Team | EDS | b6 | (202) 414- b6 |
| Carol Wanzer | Technology Training Services (TTS) Program Manager, ICE Office of Training and Development (OTD) | ICE/OTD | b6 | (202) 514- b6 |
| Darlene Swann | TTS Deputy Program Manager | ICE/OTD | b6 | (202) 514- b6 |
| John Manion | TTS/SI Operations Manager | SI/OTD | b6 | (202) 587- b6 |
| Lee Vaughan | TTS/SI Senior Project Manager | SI/OTD | b6 | (202) 587- b6 |
| Denise Eissler | TTS/SI Task Lead | SI/OTD | b6 | (202) 587- b6 |