UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SUSAN B. LONG and <br> DAVID BURNHAM, <br><br> Plaintiffs, <br><br> v. <br><br> IMMIGRATION AND CUSTOMS <br> ENFORCEMENT and CUSTOMS <br> AND BORDER PROTECTION <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 1:14-cv-109 (APM) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**DECLARATION OF DR. PAUL C. CLARK**

I, Paul C. Clark, D.Sc., hereby declare as follows:

1. I hereby incorporate my background and qualifications from my November 13, 2014 declaration by reference. This declaration responds to the Government's latest filings regarding disclosure of the database schema information for the IIDS and EID applications of Immigration and Customs Enforcement (ICE).

2. I have considered the Declaration of Mr. J. Thomas Foster and Supplementary Declarations of Mr. Fernando Pineiro and Mr. Jeff Wilson recently submitted by Immigration and Customs Enforcement (ICE) and Customs and Border Protection (CBP), as well as materials reviewed for my previous Declaration.

3. Based on my professional experience, I make the following observations with respect to defendants' latest arguments that disclosing certain

records requested by plaintiffs at issue—namely, the names of database tables and fields, schema, software information, and various technical documents for the EID and ICE's Integrated Decision Support (IIDS) database—will place defendants' systems at increased risk of a cyber-attack.

4. I understand based upon their most recent filings that defendants no longer argue that their databases will be susceptible by means of a Structured Query Language (SQL) injection attack, if the names of database tables and fields and schema are disclosed.

5. Instead, I understand that defendants through their most recent filings now contend that disclosure of field name and type information would violate principles of "defense in depth" and "least privilege" as well as increasing the likelihood of various "phishing" and other attacks requiring public network access.

6. As explained in my original declaration, as the Privacy Impact Assessment for the EID makes clear, there is no publicly accessible interface to the EID or IIDS, nor do agencies outside of the Department of Homeland Security (DHS) have access to the database systems. Thus, even if one considers affiliated agencies with purported access on the closed network, attacks requiring public network access remain irrelevant to the security analysis at hand as they pose no increased risk of attack. Mr. Foster's statements about "interconnections" among systems avoid stating that those interconnections allow access to the EID or IIDS, and fail to explain how such interconnections pose risks to the EID and IIDS and

importantly how knowledge concerning those databases would allow malicious access to other systems maintained by other agencies or other DHS components.

7. Likewise arguments regarding security principles require a demonstration of increased threat of successful attack in order to be relevant. It is worth noting that from a security perspective, a successful attack is the exploitation of a vulnerability. No evidence presented demonstrates a vulnerability that is made more exploitable by the disclosure of database schema information. Rather, the various forms of attack that Mr. Foster's declaration describes do not rely on knowledge of database schema, and the declaration points to no instance in which such attacks were attributable to knowledge of the schema of a database.

8. In particular, the two examples that the declaration discusses—the Office of Personnel Management (OPM) breach, and the breach of the Justice Department's Law Enforcement Enterprise Portal (LEEP)—are anecdotal and provide no evidence to support the Foster declaration's assertions about the risks supposedly presented by disclosure of database schema. In neither case did public release of database schema play any role, nor do these breaches demonstrate that an attacker can gain access without an external point of access. Rather, in the OPM breach, access resulted from an authentication failure, enabling external access to the networks through which the data in question could be obtained. Contrary to Mr. Foster's assertion, both of the major OPM databases that were breached—the EPIC system for security clearance information, and the eOPF system that contains

information about individual federal employees—provide web-based access.[1] Likewise, the LEEP system has a web access portal through which, at the time of the breach, a single password allowed broad access to federal law enforcement information.[2] Reviewers have linked the breaches of these systems to a variety of security weaknesses; none are attributable to public knowledge of database schema.

9. Mr. Foster's description of "Advanced Persistent Threat" intrusions illustrates that access to information such as database schema is not important to a successful attack. When, as in the OPM breach, a theft of credentials and inadequate monitoring allows intruders to obtain access to a particular database, they will obtain access to database schema along with the rest of the information in the database, and advance knowledge of the contents of the database will neither be necessary nor particularly useful to their ability to download and make use of the data.

10. Regardless, the specific principles of least privilege and defense in depth are also inapplicable for at least the following reasons. Least privilege is concerned with ensuring that a user role has only the privileges necessary to

---

[1] *See* Sean Gallagher, *"EPIC" fail—how OPM hackers tapped the mother lode of espionage data*, Ars Technica (June 21, 2015), http://arstechnica.com/security/2015/06/epic-fail-how-opm-hackers-tapped-the-mother-lode-of-espionage-data/; OPM, *Data, Analysis & Documentation: Enterprise Human Resources Integration*, https://www.opm.gov/policy-data-oversight/data-analysis-documentation/enterprise-human-resources-integration/.

[2] Nextgov, *You Only Need One Password to Access the Allegedly Hacked Law Enforcement Databases* (Nov. 9. 2015), http://www.nextgov.com/cybersecurity/2015/11/you-only-need-one-password-access-allegedly-hacked-law-enforcement-databases/123537/. The portal itself is found at https://www.cjis.gov/CJISEAI/EAIController.

perform the functions required for that role, not with concealing knowledge about what information is maintained on a system. For example, some users may not be allowed access to particular databases or applications; others may be allowed access but may be limited in the commands they may execute. As the threats identified do not involve authorized users, principles of least privilege do not apply. Providing information about the database schema is in no way inconsistent with applying the "least privilege" principle to limit privileges of system users.

11. The idea of defense in depth gained some popularity beginning in the 1990's, but security professionals soon determined that the addition of several layers of countermeasures to multiple networked systems rapidly degraded the usability and performance of those systems to unacceptable levels. Further, loosely integrated countermeasures may in practice leave vulnerabilities exposed. Thus, the idea of defense in depth was abandoned in favor of integrated countermeasures that could be objectively analyzed and tested for vulnerabilities. Notably, defense in depth did not promote security by obscurity as one of its concepts resulting in a secure system.

10. As described in my original declaration, security by obscurity is not a reliable countermeasure and thus cannot be reasonably be relied upon for the security of a computer system. Also as described above, the arguments and threats identified in the Government's most recent filings are not applicable to a security analysis of the IIDS or EID systems and thus should not be utilized to argue that

disclosure of system database schemas increase the risk of attack to ICE's IIDS or EID systems.

Pursuant to 28 U.S.C. § 1746, I hereby certify under penalty of perjury that the foregoing is true and correct.

Executed in Bethesda, Maryland on May 17, 2016.

*[signature]*
Paul C. Clark