**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SUSAN B. LONG, *et al.* | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Civil No. 1:14-cv-109 (APM) |
| v. | ) |
| | ) |
| IMMIGRATION AND CUSTOMS | ) |
| ENFORCEMENT, *et al.* | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' SUPPLEMENTAL CROSS-MOTION AND SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

On December 14, 2015, the Court issued a Memorandum Opinion and Order granting in part and denying in part Defendant, U.S. Immigration and Customs Enforcement ("ICE") and Defendant, Customs and Border Protection ("CBP") (collectively "Defendants" or the "Agency"), Motion for Summary Judgment.  During the parties' initial briefing of the matter Defendants argued, and Plaintiffs effectively conceded that the database schema information requested by Plaintiffs is the exact type of information hackers may use to manipulate data and information in Defendants' law enforcement databases undetected.  Unable to refute that assertion, Plaintiffs instead argued that even if hackers are able to use the information requested, there is no risk of a breach because the system in question does not have an external database thereby allowing access to the system to the general public.  The Court issued an Order permitting Defendants to supplement the record regarding the risks of a breach of the system given Plaintiffs' assertion that the databases in question have no external point of entry.  *See* Mem Op. at 13 – 19 ("in the exercise of its discretion, the court will permit Defendants to supplement the record with additional affidavits or other evidence to establish that disclosure of

the IED [sic] and IIDS metadata and database schema will increase the risk of a cyber-attack, data breach, or any other circumvention of the law.").

On February 2, 2016, Defendants submitted supplemental evidence in the form of three declarations addressing both the risk of circumvention of the law under Exemption 7(E), and Defendants' search, processing, and application of exemptions to FOIA request number 2012FOIA24067 ("request III").  *See* Supplemental Evidence (ECF #32).

On April 1, 2016, Defendants submitted a supplemental brief in support of their Motion for Summary Judgment arguing that there are no remaining issues of disputed fact; that Defendants have fulfilled their obligations under the applicable FOIA provisions, and that Defendants now move for summary judgment based upon their supplemental evidence.  *See generally* Def's Mt. (ECF #35).  In their supplemental motion, Defendants provided sworn declarations to support the proposition that electronic-mail based attacks do not require a public interface.  Defendants noted that phishing, spear phishing and stolen credentials can be used to access the subject databases without a public interface.  *See id*.  Finally, Defendants provided examples of recent attacks launched on the United States Office of Personnel Management and the Federal Bureau of Investigation's systems without a public interface.  *See id*.

On May 20, 2016, Plaintiffs filed their Opposition to Defendants' Motion and a Cross-Motion for Summary Judgment.  *See* Pl's Supp Mt. (ECF #37).  In their Opposition and Cross Motion, Plaintiffs argued that by supplementing their previous arguments, that Defendants have now abandoned their previous position.  *See id*.  Plaintiffs also argued that Defendants did not properly apply FOIA exemptions to request III.  In that Plaintiffs' Motion and Opposition are without support, Defendants move for summary judgment.

I.      **PLAINTIFFS' ATTEMPTS TO DISREGARD DEFENDANTS' EVIDENCE SHOULD BE REJECTED**

Plaintiffs' disregard the supplemental evidence submitted by Defendants highlighting the risks associated with access to the database schema.  In doing so, Plaintiffs effectively request that the Court ignore those risks as well.  The Court should reject Plaintiffs arguments and grant Defendants summary judgment.

A.      **Plaintiffs' Attempt to Disregard Previous Arguments Should be Rejected**

First, Plaintiffs' attempt to disregard previous sworn declarations and use Defendants' supplemental declarations in isolation should be rejected.  On June 23, 2016, J. Thomas Foster, an Information Technology Specialist with the Office of the Chief Information Officer Information Assurance Division at U.S. Immigration and Customs Enforcement executed a supplemental declaration.  *See* June 2, 2016 Declaration of J. Thomas Foster ("June 2016 Foster Decl."), attached hereto as Ex 1.  In his declaration, Mr. Foster explained that the supplemental declaration submitted in January of this year was intended to supplement, not supplant, the declarations previously executed.  *See* June 2016 Foster Decl. at ¶¶ 6 – 7 ("As previously stated, my original declaration dated January 14, 2016 [Doc. 32-3 filed February 2, 2016] was intended to **supplement** the October 8, 2014 Declaration of Karolyn Miller (Doc. 17-1 filed October 9, 2014) and the January 12, 2015 Supplemental Declaration of Jeff Wilson (Doc. 25-1filed January 28, 2015) to **explain in further detail** how the disclosure of technical documentation (records identifying each and every database table, descriptions of all fields of information stored in each of the database tables, records defining each code used in recording data, database schema, and records identifying the database software)  requested by the plaintiffs . . . could reasonably be expected to risk  a cyber-attack against the Agency's databases and/or other circumvention of the law."); ("The supplemental information contained in my declaration dated

3

January 14, 2016 does not in any manner diminish or negate the information contained in either

the declaration of Karolyn Miller (Doc. 17-1 filed October 9, 2014) or the January 12, 2015

Supplemental Declaration of Jeff Wilson (Doc. 25-1 filed January 28, 2015).").  Accordingly,

Plaintiffs' argument that Defendants have abandoned their previous positions regarding how

release of the requested information may risk circumvention of law, by focusing on specific risks

mentioned in supplemental declarations, is without merit.

Indeed, Defendants maintain the position that release of the requested information will

continue to leave Defendants vulnerable for an SQL attack even if there is no public interface to

the systems themselves.  *See* June 2016 Foster Decl. at ¶ 9 ("Despite assertions in the May 17,

2016 Paul C. Clark declaration, a publicly accessible interface to EID or IIDS is not required to

expose data contained in internal systems to malicious intrusions. The Agency's databases are at

an increased risk of SQLIAs, phishing, advanced persistent threat intrusions, spear phishing, and

other forms of malicious intrusions, as well as the subsequent theft of data, data corruption, data

erasure, and/or data modification, if the technical documentation (database schema, tables, fields,

etc.) pertaining to EID and IIDS is released to the public at large.").  Indeed, "[b]ecause the

success of SQLIA is dependent in large measure on the attacker's ability to access and utilize

technical information to extract additional information or gain greater access to an information

technology system like EID/IIDS, the disclosure of the database schema, tables, codes, code

values, and database version for the EID and IIDS databases systems, as requested by the

Plaintiffs, would disclose the exact information that an SQLIA attacker would need to penetrate

the EID and IIDS databases and systems despite the lack of a web interface and could reasonably

be expected to risk a cyber-attack against the Agency's databases and/or other circumvention of

the law." *Id*. at ¶ 8.  Accordingly, Plaintiffs argument that the database schema should be

released because Defendants could be attacked with or without the schema disregards the key fact that use of the database schema could allow for "greater access" to information within the system as well as long-term manipulation of that material.  *See id*; *see generally* Def's Mt for Sum. Judg. (ECF #17).

Plaintiffs' continued assertions that the release of the database schema does not leave Defendants vulnerable, are simply without factual support.  Indeed "Paragraph 7 of the May 17, 2016 declaration of Mr. Clark, states that '[n]o evidence presented demonstrates a vulnerability that is made more exploitable by the disclosure of database schema information.'  However, it is well known that vulnerabilities exist in all information technology systems at some level and that skilled cyber attackers study network diagrams, database schema, database table/fields, metadata and software versions to identify the most vulnerable entry points to sensitive systems and data and to gather other technical information about the systems. The more detailed information the cyber attacker can acquire, the more likely it is that they will be able to conduct a SQLIA or successfully execute phishing/spear phishing campaigns. This in turn provides malicious intruders with unauthorized access to sensitive databases such as EID and IIDS through which they can continue to utilize the technical documentation to harm the systems.[1]"  June 2016 Foster Decl. at ¶ 10.

---

[1] See *Hacker's Choice: Top Six Database Attacks*, http://www.darkreading.com/risk/hackers-choice-top-six-database-attacks/d/d-id/1129481 (Accessed June 6, 2016) "Database vendors are careful not to disclose many **details about the vulnerabilities** their patches fix for fear of tipping off attackers, but organizations still struggle with the massive manpower and time it takes to test and apply a database patch. Patching requires the painstaking task of testing all applications affected by the patch, for instance"; *5 Ways Hackers Gain Access to Your Data,* http://www.mydigitalshield.com/5-ways-hackers-gain-access-data/ (Accessed June 6, 2016) "Within your company, it's important to provide ongoing training and education about these types of attacks. This is the best method for keeping employees from unintentionally providing information that could compromise your business network. Another common phishing scam involves the hacker contacting a target and advising them that they have been the victim of a

Defendants have repeatedly proffered evidence in the form of declaration testimony to support the proposition that the exact database schema Plaintiffs seek may be used to help launch an SQL attack.  *See* Oct. 8, 2014, Declaration of Karolyn Miller ("Miller Oct. 2014 Decl."), attached to Defendant's Motion for Summary Judgment as Exhibit 1, at ¶ 10 ("Metadata, including codes and auxiliary tables, can provide specific information that a malicious intruder can use to construct an attack targeting the data formats and data elements within the database.  .  .  . To exploit a SQL injection flaw, the attacker must find a parameter that the web application passes through to a database."); *Id*. at ¶ 10 ("By carefully embedding malicious SQL commands into the content of the parameter, the attacker can trick the web application into forwarding a malicious query to the database.  This will result in a database error, which can allow the attacker to modify data, delete data or view data that would not ordinarily be made available, for example, usernames and passwords."); *Id*. at ¶ 11. ("Disclosure of any database schema or any database metadata information to parties interested in theft of ICE data or in corrupting or destroying ICE database records could potentially result in failed law enforcement operations, serious injury or loss of life.").  Plaintiffs' attempt to now side-step that evidence should be rejected.

B.     **Plaintiffs' Additional Arguments that there is No Risk of Circumvention of Law should also be Rejected.**

Plaintiffs' additional arguments that there is no risk of circumvention of law should also be rejected.  Plaintiffs' argue that despite sworn declarations and specific examples of attacks on

---

scam. The perpetrator offers to help the target and asks them for the very same confidential information – such as social security numbers and banking details – they are claiming has been stolen. Remind team members to be on the lookout for suspicious e-mail attachments, pop-up screens asking for personal information, and hackers posing as authority figures looking for personal or confidential data.."

Government systems that release of database schema creates **no risk** of circumvention of law. *See generally*, Pl's Opp / Cross Mt.  Indeed paragraph 8 of the May 17, 2016 declaration of Plaintiffs' declarant, Paul C. Clark, asserts that the two examples (OPM and LEEP breaches) provided in the J. Thomas Foster declaration dated January 14, 2016, are anecdotal and therefore provide no evidence to support the assertions about the risks posed by the disclosure of database schema.  "It should be noted, [however], that every theory of attack vectors in a computer breach is anecdotal and the review of prior breaches provide very valuable information for the future of database security and support the Government's position that the release of technical documentation increases the risk of future cyber-attacks or other circumventions of the law." June 2016 Foster Decl. at ¶ 11.

Furthermore, Dr. Clark's assertion that the two illustrative examples do not "demonstrate that an attacker can gain access without an external point of access," simply reflect a misunderstanding and/or mischaracterization of the Government's position in this case. "From a database security perspective the issue is not whether an attacker can gain access without an external point of access using the database schema.  Databases can be accessed with or without an external point of access – this is simply a matter of how the intruder chooses to make access." *Id*.  Defendants do not assert that the database schema is a necessary component for a breach. Indeed, "an intruder does not need external access to a database to obtain unauthorized access to a system such as EID or IIDS via phishing or other social engineering methods."  *Id*.  In contrast, Defendants' position, as noted above, is that unauthorized access is facilitated, and exacerbated "when an intruder has access to the technical documentation about a database, which in part provides the categories of information that are held within database tables [personally identifiable information, status of actions, names of ICE employees associated with records] and

how the database tables are interrelated and connected.  Technical documentation also provides information regarding the types of access [user only versus privileged, which allows for deletion or modification of data], audit log data from which patterns of use by employees can be derived, and data sources imported from other systems. All of this information allows a malicious intruder to study key vulnerabilities and become well-versed in the database itself.  This knowledge increases the likelihood that that unauthorized access will be successful and the intruder can further the attack from inside the database armed with all of the technical documentation in a timely fashion." *Id.* at ¶ 11.

Likewise, paragraph 8 of the May 17, 2016 Paul C. Clark declaration is another example of either a misunderstanding or an attempt to misconstrue Defendants' position.  In paragraph 8 Mr. Clark "appears to argue that the release of database schema pertaining to the OPM system played no role in that particular breach."  *See* June 2016 Foster Decl. at ¶ 12 (citing Clark Decl.). Mr. Clark makes that assertion, however, "without offering any authority for the proposition." *Id.*  "In addition, the declaration asserts that the OPM breach example wherein the public gained access to a closed network through an authentication failure supports Plaintiffs' position that there must always be external access in order for there to be an increased risk of circumvention of the law. The fact of the matter is that unauthorized access can occur in a variety of ways as described in prior declarations[2]; this unauthorized access can be facilitated by a detailed study of publicly released database schema and technical documentation; and that once the intruder obtains unauthorized access to a system it does not matter where there was or was not an externally facing interface to the network.  Once in the system, an intruder with nefarious intent

---

[2] Declaration of Karolyn Miller In Support of the United States Department of Homeland Security's Motion for Summary Judgment, Doc. 17-1, Filed 10/09/14; Declaration of J. Thomas Foster In Support of the United States Department of Homeland Security's Motion for Summary Judgment, Doc. 32-3, Filed 2/02/16

can corrupt, modify, erase, delete data; or cause a denial of service; and/or exfiltrate sensitive data for unauthorized release."  June 2016 Foster Decl. at ¶ 12.

In an attempt to salvage their claims, Plaintiffs also ask the Court to disregard the concept of least privilege; the Court should reject that invitation.  Paragraph 10 of Mr. Clark's declaration disputes the relevance of the concept of "least privilege" to the case at issue.  "However, disclosing information pertaining to administrative rights and privileges to the public could reasonably be expected to result in the circumvention of law.  Providing malicious intruders with advance notice of this information could assist in the escalation of privileges.  Least privilege is not just about having the right permissions on a system to do your job but also that you have a need to know aspects of the system that are not commonly shared within the enterprise as a whole.  This information would make reverse engineering infinitely easier.  Knowing which tables are part of the database, what is contained in those tables and how the tables are linked together would make it easier for an attacker to pinpoint the most valuable information – especially if they are by-passing the front application and working directly against the database." June 2016 Foster Decl. at ¶ 13.

Finally, Paragraph 11 of Mr. Clark's declaration "dismisses the concept of 'defense in depth' for establishing the security of information technology systems and asserts that 'defense in depth' has been abandoned in favor of integrated countermeasures.  'Defense in depth' has not been abandoned by IT security professionals and it is still a basic security practice since advancements in technology and experience have eliminated any degradation of service. Integrated countermeasures cited as the newly accepted security principle by Dr. Clark is simply another term for 'defense in depth.'"  June 2016 Foster Decl. at ¶ 14.

In the end, "Exemption 7(E) sets a relatively low bar for the agency to justify withholding: 'Rather than requiring a highly specific burden of showing how the law will be circumvented,'" this exemption "'only requires that the agency demonstrate logically how the release of the requested information might create a risk of circumvention of the law.'" *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194) (D.C. Cir. 2009); *see also id.* ("[T]he exemption looks not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk.") (internal quotation marks omitted).   In the instant case Defendants have explained, in detail, how the requested information may be used to launch sustained, long-term and unnoticed attacks on Defendants' law enforcement systems, including the potential manipulation of law enforcement data.   Defendants have provided evidence to establish that attacks can be launched on Defendants' systems despite a lack of a public interface, and have further provided examples of attacks on other Government computer systems without a public interface.   Defendants have therefore established that the release of the requested information may create the *risk* of circumvention of law and Defendants, accordingly, request summary judgment.

## II.     DEFENDANTS ARE ENTITLED TO JUDGMENT WITH RESPECT TO FOIA REQUEST III

Finally, as previously argued in Defendants' Supplemental Motion, Defendants are entitled to summary judgment with respect to FOIA request III.   As noted in Defendants' supplemental motion, despite knowledge that many of the categories of documents requested did not exist and given the large scope of the request with respect to copies of the extracts/snapshots,

10

Defendants undertook a search for responsive records "using methods [] reasonably expected to produce the information requested.'"  Mem Op. at 29; *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  Specifically, Defendants identified the place most likely to have responsive material as well as the employees most likely to have responsive records and requested that they search for three types of records: "1) information regarding EID data replicated to various environment; how often, and to whom; 2) information regarding EID data provided through interfaces; how often, and to whom; and 3) information regarding EID data shared through EID services; how often, and to whom."  *See* January 13, 2016, Supplemental Declaration of Fernando Pineiro ("Jan. 2016 Pineiro Decl.") (ECF# 32-1) at ¶¶ 11 – 16.  The search resulted in a nine (9) page responsive document that was processed and released to Plaintiffs on January 25, 2013, with portions redacted pursuant to Exemptions (b)(6), (b)(7)(C), and (b)(7)(E).  *See id*. at ¶ 17.  Despite Defendants' search for responsive records and accurate application of the exemptions, Plaintiffs argue in their Opposition and Reply that Defendants failed to conduct an adequate search, that Defendants have violated their FOIA obligations by failing to provide a separate *Vaughn* index, and that Defendants have failed to provide reasonably segregable data. Plaintiffs' arguments are without merit.

> **A.      Defendants Conducted an Adequate Search**

Contrary to Plaintiffs' assertions, Defendants conducted an adequate search.  "The standard for determining whether a search was adequate depends on the adequacy of the search for documents, not whether additional potentially responsive documents exist."  *Lardner v. F.B.I.*, 875 F. Supp. 2d 49, 55 (D.D.C. 2012) (quoting *Steinberg v. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994)).  In the context of agency responses to FOIA requests, "[a]n adequate search consists of a good faith, reasonable search of those systems of records likely to possess the requested information."  *Id.* (citing *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir.

1990)).  Indeed, the adequacy of a search for records requested is "determined not by the fruits of the search, but by the appropriateness of its methods."  *Hodge v. F.B.I.*, 703 F.3d 575, 579 (D.C. Cir. 2013) (quoting *Iturralde v. Comptroller of the Currency,* 315 F.3d 311, 315 (D.C.Cir.2003)). Accordingly, the Agency's affidavits need not "set forth with meticulous documentation the details of an epic search for the requested records," but "affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA."  *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982).

In the instant case, Defendants conducted a good faith and reasonable search of those non-SLM repository records likely to possess responsive records and released those responsive records to Plaintiffs.  *See* Jan. 2016 Pineiro Decl. at ¶¶ 11 – 16; *Steinberg v. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994).  That search yielded the release of nine (9) pages of responsive records.  The "nine (9) pages that were released were entitled "EARM Interfaces Summary for FOIA Request" with the document being "created in an effort to respond to plaintiffs' FOIA request III."  February 2, 2016 Supplemental Declaration of Jeff Wilson ("Feb. 2016 Wilson Decl.") (ECF# 32-2) at ¶ 6.  The nine (9) page document was "not a document that is kept or maintained by ICE in its normal course of business," and was "not located within the system lifecycle management (SLM) repository where the other responsive documents reside."  *Id.*

With respect to the SLM repository records, Defendants explained that a similar search of the SLM repository has already been conducted, that a detailed list of all SLM repository documents has been provided in the form of a previously filed *Vaughn* index, and Defendants provided detailed explanations of its basis for withholding any responsive records that may be amongst the SLM repository documents listed.  Jan. 2016 Pineiro Decl. at ¶ 12 ("the SLM

repository was reviewed in its entirety for responsive documents" and a detailed description "of all documents contained in the entire SLM repository" were listed in Defendants' Supplemental *Vaughn* Index (ECF # 17-4) and Amended Detail Description Table (ECF # 25-4)"); *Id.* at ¶ 13 (any additional information, related to FOIA Request III, not captured in Defendants' initial 2013 search "is either located in the same SLM repository as the documentation requested in FOIA Requests I and II, and in many cases overlaps with that documentation directly, or is not captured and documented in any documentation, such as the names of the employees responsible for monitoring the automated process involved with preparing an extract, the names of persons responsible for monitoring the automated processes involved with receiving an extract, and the system time required for preparation of the extracts.  This would make further searching for documentation in response to FOIA Request III duplicative.").  Defendants are not required to conduct duplicative searches, and detailed information regarding each document in the SLM repository is already before the Court.  *See Rein v. U.S. Patent & Trademark Office*, 553 F.3d 353, 363 (4th Cir. 2009) ("Substantial portions of the requests overlapped, and wholly new and independent searches for each request would be duplicative and without a discernible benefit. Simply put, the FOIA did not require the USPTO to perform an entirely new, duplicative search for each request.").  Plaintiffs' arguments that Defendants failed to conduct an adequate search are, therefore, without merit.

**B.      Defendants Fulfilled their Duty to Identify the Basis for their Exemptions**

Plaintiffs' argument that Defendants have violated their FOIA obligations by failing to provide detailed *Vaughn* indices for documents responsive to FOIA request III is, likewise, without merit.  First, as previously discussed, a detailed *Vaughn* index describing all of the documents in the SLM repository has already been provided to the Court.  *See* Jan. 2016 Pineiro Decl. at ¶¶ 12 – 13.  To the extent Plaintiffs' argument is that Defendants have failed to meet

their FOIA obligations by not including their specific exemptions based on request III in the previously filed *Vaughn* index, Defendants fulfilled their obligations by providing Plaintiffs and the Court detailed descriptions of the exemptions they were asserting and the legal basis for their assertion of those exemptions. *See* Feb. 2016 Wilson Decl. at ¶¶ 16 – 21 (explaining in detail Defendants' basis for applying Exemption 7(E) to withhold documents "identifying any extracts and 'snapshots' prepared from EID over the last 12 months"); Feb. 2016 Wilson Decl. at ¶¶ 23 – 24 (explaining in detail Defendants' basis for assertion of Exemption 7(E) to Plaintiffs' requests for records "relating to the frequency with which such extracts and snapshots have been prepared"); Feb. 2016 Wilson Decl. at ¶¶ 28 – 35 (explaining in detail Defendants' basis for asserting Exemptions 6, 7(C), and 7(E) to Plaintiffs' request for records related to the names of individuals responsible for preparing snapshots or extracts from EID); Feb. 2016 Wilson Decl. at ¶¶ 38 – 43 (providing a detail description of Defendants basis for asserting Exemptions 6, 7(C), and 7(E) to protect records identifying the entities designated as intended recipients of prepared snapshots or extracts from EID); Feb. 2016 Wilson Decl. at ¶¶ 45 – 49 (providing a detailed description of Defendants basis for asserting Exemption 7(E) to protect information regarding the system time required to prepare the subject extracts and snapshots).  Accordingly, Plaintiffs' argument that Defendants have failed to fulfill their FOIA obligations by providing a *Vaughn* index related to the FOIA request III documents contained in the SLM repository is without merit.

　　　　Likewise, Plaintiffs' assertion that Defendants have failed to fulfill their FOIA obligations by failing to provide a detailed *Vaughn* index related to the nine (9) produced pages of non-SLM material responsive to request III is without merit.  Contrary to Plaintiffs' assertion, the *Vaughn* index submitted as Exhibit 26 with Defendants' original motion contains an entry for

the nine (9) pages at issue in entry number 14.  *See Vaughn* index (ECF #17-3 Ex. 26) (noting

that entry number 14 pertains to FOIA request 12-24067).  Defendants also identified the basis

for their redactions of the nine (9) pages pursuant to Exemptions (b)(6), (b)(7)(C), and (b)(7)(E)

in their January 25, 2013 letter to Plaintiffs, the October 1, 2014 Declaration of Fernando Pineiro

and the January 13, 2016 Declaration of Fernando Pineiro.  *See* October 1, 2014 Declaration of

Fernando Pineiro ("Oct. 2014 Pineiro Decl.") (ECF # 17-2) at ¶¶ 44 – 56; Jan. 2016 Pineiro

Decl. at ¶ 17.  Accordingly, Plaintiffs argument that Defendants failed to adequately identify the

basis for their redactions is without merit.

First, Defendants provided a detailed explanation for the basis of their assertion of

exemptions in the original response letter, dated January 25, 2013, and attached to Defendants'

initial Motion for Summary Judgment as Exhibit 15 (ECF #17-3 exhibit 15).  *See* Jan, 25, 2013

FOIA response letter, (ECF #17-3 exhibit 15).  Defendants also listed their exemptions in the

*Vaughn* index attached to their opening brief and explained their application of the applicable

exemptions in greater detail in the October 1, 2014 Declaration of Fernando Pineiro.  In his

October 2014 Declaration, Mr. Pineiro explained that "ICE applied Exemption (b)(6) in

conjunction with Exemption (b)(7)(C) to protect from disclosure the names, phone numbers and

email addresses of law enforcement officers, employees of law enforcement agencies, and

employees of other federal government agencies who have access to, are responsible for

maintaining, or have the ability to manipulate various law enforcement database systems."  Oct.

2014 Pineiro Decl. (ECF # 17-2) at ¶ 56.

FOIA Exemption 6 protects from disclosure "personnel and medical files and similar files

the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5

U.S.C. § 552(b)(6).  "The information in the file 'need not be intimate' for the file to satisfy the

standard, and the threshold for determining whether information applies to a particular individual is minimal." *Milton v. DOJ*, 783 F.Supp.2d 55, 58 (D.D.C. 2011) (quoting *N.Y. Times Co., v. NASA*, 920 F.2d 1002, 1006 (D.C. Cir. 1990)).

"Once this threshold determination is met, a court next inquires whether disclosure would compromise a 'substantial' privacy interest because FOIA requires the release of information 'if no significant privacy interest is implicated.'" *Ayuda Inc. v. Federal Trade Commission*, -- F.Supp.3d --, 2014 WL 4829574 at *8 (D.D.C. 2014) (quoting *Multi Ag Media LLC v. U.S. Dep't of Agric.*, 515 F.3d 1224, 1229 (D.C. Cir. 2008). "This standard, however, 'means less than it might seem,' as a substantial privacy interest is 'anything greater than a *de minimis* privacy interest.' If a substantial privacy interest exists, a court next tests whether release of such information would constitute a 'clearly unwarranted invasion of personal privacy,' by balancing 'the privacy interest that would be compromised by disclosure against any public interest in the requested information.'" *Id.* (internal citations omitted).

As previously noted, FOIA Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). "Though Exemptions 6 and 7(C) both require agencies and reviewing courts to undertake the same weighing of interests, the balance under Exemption 7(C) 'tilts more strongly toward nondisclosure' because its "privacy language is broader than the comparable language in Exemption 6[.]'" *Ayuda Inc. v. Federal Trade Commission*, -- F.Supp.3d --, 2014 WL 4829574 at *15 (D.D.C. 2014) (quoting *DOJ v. Reporters Com. for the Freedom of Press*, 489 U.S. 749, 756 (1989)). "The Supreme Court has explained that these phrasing differences reflect Congress's choice to provide 'greater protection' to law enforcement materials than to 'personnel, medical, and other similar files.'

Thus, the D.C. Circuit consistently has held that Exemption 7(C) 'establishes a lower bar for withholding material [than Exemption 6].'"  *Id*. (quoting *ACLU v. DOJ*, 655 F.3d 1, 6 (D.C. Cir. 2011)) (internal citations omitted).

Mr. Pineiro explained that the "release of the names of these individuals could subject [them] to undue invasion of personal privacy, or potentially jeopardize their safety," and that "[a]ny perceived public need for information pertaining to the identify of these [law enforcement] individuals is heavily outweighed by their personal privacy interest, and the release of this information would do nothing to inform the public about how ICE or other government agencies conduct internal operations or enforce the nation's laws."  Oct. 2014 Pineiro Decl. at ¶ 56.

Defendants have, accordingly, provide a logical and plausible explanation for invoking exemptions (b)(6) and (b)(7)(C) and Plaintiffs are unable to proffer a public interest in disclosing information capable of endangering law enforcement officials sufficient to overcome their personal privacy and safety.  Defendants are, accordingly, entitled to summary judgment.  *See Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007) ("Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'") ; *Fischer v. DOJ*, 596 F.Supp.2d 34, 47 (D.D.C. 2009) ("The D.C. Circuit has consistently held that Exemption 7(C) protects the privacy interests of all persons mentioned in law enforcement records, including investigators, suspects, witnesses, and informants.").

Furthermore, detailed justification for Defendants' decision to redact information contained in the nine (9) pages released pursuant to FOIA Exemption (b)(7)(E) was included in Mr. Pineiro's October 1, 2014 Declaration as well.  Mr. Pineiro explained that "ICE applied FOIA Exemption (b)(7)(E) to protect from disclosure law enforcement sensitive database

information, including information relating to how ICE's systems interact with other law

enforcement systems, along with information relating to where information relating to the threat

levels of aliens encountered, arrested, or detained by ICE are stored within the databases or their

modules."  Oct. 2014 Pineiro Decl. at ¶ 51.

Exemption 7(E) permits the withholding of law enforcement information that "would

disclose techniques and procedures for law enforcement investigations or prosecutions, or would

disclose guidelines for law enforcement investigations or prosecutions if such disclosure could

reasonably be expected to risk circumvention of the law[.]"  5 U.S.C. § 552(b)(7)(E).  "To show

that ... documents were compiled for law enforcement purposes, the [agency] need only establish

a rational nexus between [an] investigation and one of the agency's law enforcement duties and a

connection between an individual or incident and a possible security risk or violation of federal

law."  *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (internal citations and quotation marks

omitted).  Indeed, this Court has already ruled that the records collected in this case were

"compiled for law enforcement purposes."  *See* Mem Op. at 10 – 11.

With respect to whether the redacted information may disclose law enforcement

techniques and risk circumvention of law, Mr. Pineiro explained that Defendants redacted

information "relating to how ICE's systems interact with other law enforcement systems, along

with information relating to where information relating to the threat levels of aliens encountered,

arrested, or detained by ICE are stored within the databases or their modules," because

"disclosure of this law enforcement database information could expose ICE's sensitive law

enforcement data systems to outside entities, and allow individuals, companies, or foreign

governments to gain unauthorized access to the contents of those systems, to include law

enforcement sensitive investigatory data, and sensitive personally identifiable information on the

aliens and the users of those systems." Oct. 2014 Pineiro Decl. at ¶¶ 51 – 52.  Mr. Pineiro also

explained that the "release of certain information relating to the structure of these systems could

allow an authorized party to illegally gain access to ICE systems and manipulate, corrupt, or

unlawfully use that data."  *Id*. at ¶ 47.  Defendants have extensively briefed the dangers of the

system-related information Plaintiffs seek in isolation and in the aggregate.  *See* Feb. 2016

Wilson Decl. at ¶ 50 ("If the elements of who, what, where, why, and how are woven together to

provide an advanced knowledge of the internal environment of a database system, the likelihood

of an attack would increase significantly.  Recreating events that depict start time, users,

responsible parties, recipients, and frequency of events provides the user with an advantage in

determining the most vulnerable aspects to the systems.  They can begin to model and predict

outcomes that could detrimentally impact mission critical operations for our interconnected

systems and agencies."  *Id*. at ¶ 52 ("Each piece of this request – appearing to be insignificant

when contained in separate requests, could be assembled to display a more complete picture of

[Defendants'] system and [be] used to defeat [the Agency's] protection of these systems.  In the

cyber security profession, this is called 'mosaic analysis,' and assembly of desperate pieces to

illuminate a larger picture.  When taken together in response to a detailed FOIA request, the

government is required to consider this in securing [its] data systems.").  Defendants have,

accordingly, properly applied Exemption (7)(E) to its redactions.  *See Mayer Brown LLP*, 562

F.3d at 1194 ("Rather than requiring a highly specific burden of showing how the law will be

circumvented, exemption 7(E) only requires that the IRS 'demonstrate[ ] logically how the

release of [the requested] information might create a risk of circumvention of the law.'").

  In that Defendants provided detailed explanations of their assertions of exemptions,

including a notation of the redactions applied to the nine (9) responsive pages in a *Vaughn* index

and information regarding all of the documents in the SLM repository in a separate *Vaughn*

index, Plaintiffs' argument that Defendants violated FOIA by failing to provide *Vaughn* indices

is without merit.

      **C.**     **Defendants Provided Reasonably Segregable Information**

     Ironically, despite the fact that Defendants provided nine (9) redacted pages of

documents responsive to what has been previously identified as Plaintiffs' FOIA request III,

Plaintiffs now argue that Defendants have failed to provide reasonably segregable information.

*See* Pl's Opp / Cross Mt.  The release of properly redacted information is evidence that

Defendants undertook a proper segregability analysis and to the extent Plaintiffs challenge the

assertion of particular exemptions to categories of documents like the snapshot itself, which this

Court has already determined should not be released, than Plaintiffs' argument is with respect to

the application of exemptions and not Defendants' segregability efforts.  *See* December 14, 2015

Memorandum Opinion ("Mem Op."), ECF #29, at 23 – 24  (holding that copies of the extracts /

snapshots need not be produced in the instant case because they include more than 6.7 billion

rows of data and "producing and redacting the requested snapshots would be unduly

burdensome.").  Accordingly, Plaintiffs' segregability arguments are without merit.

      **D.**     **Defendants Properly Applied Applicable FOIA Exemptions**

     Finally, Defendants properly applied the applicable FOIA exemptions to the documents

responsive to Plaintiffs' FOIA request III.   Defendants provided a detailed analysis of the basis

for its decision to protect individual privacy interest and safeguard against circumvention of law

and Plaintiffs proffer little more than argument that Defendants' statements are "unwarranted" to

challenge Defendants' assertions.  *See generally* Def's Supp Mt. (ECF #35) *cf*  Pl's Supp Opp /

Cross Mt. (ECF #37).  In that Defendants have properly applied the subject FOIA exemptions,

Defendants are entitled to summary judgment.

\*       \*       \*

Dated: July 1, 2016,
          Washington, DC

Respectfully Submitted,

CHANNING D. PHILLIPS, D.C. Bar #415793
United States Attorney
for the District of Columbia

DANIEL F. VAN HORN, D.C. Bar #924092
Civil Chief

By: _/s/ Carl E. Ross_ _____ ____
CARL EZEKIEL ROSS, D.C. Bar #492441
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
Tel:  (202) 252-2533
Fax:  (202) 252-2505