UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SUSAN B. LONG and DAVID BURNHAM, <br><br> Plaintiffs, <br><br> v. <br><br> IMMIGRATION AND CUSTOMS ENFORCEMENT and CUSTOMS AND BORDER PROTECTION, <br><br> Defendants. | ) <br> ) <br> ) <br> ) Civil Action No. 14-109 (APM) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**SUPPLEMENTAL DECLARATION OF JEFF WILSON
IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

I, Jeff Wilson, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am the Unit Chief of the Information Technology Management Unit (the "ITM Unit") within Enforcement and Removal Operations ("ERO") Law Enforcement Systems and Analysis ("LESA") at U.S. Immigration and Customs Enforcement ("ICE"). I have held this position (formerly known as the Unit Chief of the "Information Technology and Modernization Unit") since August 2010. I served as the Acting Chief for the Modernization Unit from December 2008 until accepting my current position. Prior to joining ICE in 2007 as a Management and Program Analyst, I spent 16 years at the United States Treasury Department holding an array of positions in the budget and information technology fields.

2. The ITM Unit coordinates business side priorities and Information Technology ("IT") project agreements supporting ICE's objectives by developing new and modernizing existing technologies for ERO. Also, with respect to Freedom of Information Act ("FOIA") requests, the ITM Unit, along with other Units within LESA, respond to and review any FOIA

requests that deal with ERO data, to include operational reporting or general documentation about systems that house information related to ERO law enforcement activities.

3. As the Unit Chief for the ITM Unit, my official duties and responsibilities include the general management, oversight, and supervision of the ITM Unit and coordination with the ICE Office of the Chief Information Officer ("OCIO"). OCIO provides information technology services and products that enable ICE and DHS to meet their respective missions. In order to meet these goals, the OCIO has developed a number of critical IT initiatives that will help ICE modernize its IT systems, adapt and conform to modern IT management disciplines, and provide IT solutions throughout ICE. I manage and supervise a staff of ICE Information Technology Subject Matter Experts and Program Managers, who report to me regarding the advancement and progress of system updates and modernizations.

4. The statements contained in this declaration are based upon my personal knowledge, my review of documents kept by ICE in the ordinary course of business, and information provided to me by other ICE employees in the course of my official duties.

5. In my role as the Unit Chief for the ITM Unit, and as set forth in my previous declarations dated October 2, 2014, and January 12, 2015, which this declaration supplements, I am familiar with the FOIA requests that are the subject of this lawsuit. I make this supplemental declaration in further support of Defendants' Motion for Summary Judgment and to specifically respond to the Court's question of: "Whether there remains a 'reasonable' risk of a security breach given Plaintiffs' claim that Defendants previously disclosed samples of the requested information."

## I. ICE'S PREVIOUS INADVERTENT RELEASES AND ICE'S RESPONSE TO MITIGATE THE RISK OF A SECURITY BREACH

6. I am aware of Plaintiffs' claim that the technical documentation pertaining to the Enforcement Integrated Database ("EID") and the ICE Integrated Decision Support ("IIDS") Database is not law enforcement sensitive and will not cause harm to the agency upon release because the agency has released similar information to Plaintiffs in response to their previous FOIA requests that are not the subject of this litigation.

7. As stated in my January 12, 2015 declaration, ICE inadvertently released these documents without the approval of LESA, the ICE program office with equities in this type of information.

8. This release did at the time, and still does today, pose a reasonable and significant risk of a database compromise. Although ICE cannot retract prior inadvertent releases, any additional release of technical documentation as currently sought by Plaintiffs will only serve to further increase the risk of compromise to EID and IIDS.

9. In June 2013, LESA first became aware of the inadvertent releases through an additional FOIA request submitted by Plaintiffs at or around that time. Because of the level of specificity of that FOIA request, LESA concluded that the Plaintiffs must have previously obtained documentation about EID and IIDS. As a result of this discovery, LESA requested and reviewed, for the first time, the documents that had been inadvertently released and was able to identify that they posed a significant security risk of a database compromise.

10. In light of the significant security risk, LESA notified OCIO regarding the inadvertent release, and requested that OCIO perform a security review of the material released to assess the potential harm to the agency. OCIO's Chief Information Security Officer concurred with LESA's assessment that the release of the documents posed a security risk to the EID and

IIDS. Three remedial actions were immediately implemented in order to protect the agency from both inadvertently releasing this type of law enforcement sensitive information in the future and to immediately heighten the code security and the auditing features of the existing database. Specifically:

a) Additional training was provided to those individuals who work on responses to FOIA requests concerning sensitive IT information. The training focused on the scope of what must be redacted, with a particular emphasis on what must be redacted from user manuals and other system documentation. This training also included instruction on removing screen shots, any references to actual database table names, actual table attribute (data elements) names, data formats/types and actual code values because the release of such information would pose a significant security risk.

b) ICE conducts code scanning on all applications impacted by the inadvertent releases to ascertain any related vulnerabilities to the EID and IIDS.

c) ICE conducts audits of the EID and IIDS databases to identify any unauthorized account access activity. Auditing is the monitoring and recording of selected user database actions. It can be based on individual actions, such as the type of SQL statement executed or a combination of factors that can include, but are not limited to, user name, application and time. OCIO and the ISSO review the audit logs at least weekly.

11. The new procedures provide an opportunity for ERO to review any records provided to ICE FOIA in response to a FOIA request by ICE OCIO that may contain ERO equities. ERO is then able to assist ICE FOIA in flagging any law enforcement sensitive IT information for redaction within those records.

II. **THERE REMAINS A REASONABLE RISK OF A SIGNIFICANT SECURITY BREACH EVEN THOUGH ICE INADVERTENTLY RELEASED LAW ENFORCEMENT SENSITIVE INFORMATION TO THE PLAINTIFFS PREVIOUSLY**

12. The information contained in the previous inadvertent releases constitutes only a small subset of the information and documentation that the Plaintiffs currently seek. The harm caused by the inadvertent releases and the risk that existed then would only be compounded by releasing more information now, and would significantly increase the existing security risk.

13. Additionally, the metadata, database schema, table names, data field names, database software and version change on a regular basis. They are part of a live system that adds and removes information over time. As such, the information that was inadvertently released is not identical to the information that currently exists and only represents a small subset of the total amount of similar information that exists today. Since the information that was inadvertently released has changed in structure and schema, any further release of similar information would not only compound the existing risk of a significant security breach, but as the release would essentially be an entirely new release, there would be a new risk of a significant security breach.

14. Based on my 26 years' worth of experience working in the IT field, for the reasons explained above, as well as the reasons explained in the previous declarations submitted in support of the Defendants' summary judgment motions, including my own, there remains a reasonable risk of a significant security breach notwithstanding the previous inadvertent disclosure of a limited sample of the information Plaintiffs now seek.

### III. JURAT CLAUSE

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge and belief. Signed this 28th day of February 2017.

_____
Jeff Wilson
Unit Chief, Information Technology Management Unit
Law Enforcement and Systems Analysis
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security
500 12th Street, S.W., Stop 5009
Washington, DC 20536-5009