UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SUSAN B. LONG, *et. al.*, | ) ) | |
| Plaintiffs, | ) | |
| v. | ) ) | Civil Action No. 1:14-cv-109 (APM) |
| IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' SECOND SUPPLEMENTAL MEMORANDUM**

Plaintiffs' supplemental memorandum, filed on May 20, 2016, pointed out that "ICE's claims that release of database schema and other 'metadata' describing the contents of the databases pose an unacceptable risk of enabling cyber-attacks are … incoherent, as ICE fails to distinguish information it is now withholding from information it has previously provided." Pl. Supp. Mem. 10–11. Plaintiffs argued that "the inconsistency of ICE's invocation of security concerns is a telling indication that those concerns are not genuine and that they reflect efforts to inhibit public access to the information in its EID—information that constitutes the official public record of ICE enforcement efforts, including formal, public proceedings and other non-classified, non-exempt information about its activities." *Id*. at 11. In a telephonic conference with counsel on January 26, 2017, the Court observed that the defendants' briefing did not respond to these points. The Court accordingly ordered supplemental briefing on "[w]hether there remains a 'reasonable' risk of a security breach given Plaintiffs' claim that Defendants previously disclosed samples of the requested information." The supplemental brief submitted by the defendants fails to address that issue convincingly and instead focuses on a different issue altogether: waiver.

Relying on a supplemental declaration from ICE employee Jeff Wilson, the government contends that its earlier productions of records containing voluminous amounts of information of

exactly the same nature as information it now claims is exempt were "inadvertent." The government then argues that those productions do not meet the standard for waiver of a *valid* claim of exemption under FOIA because plaintiffs have not shown that the records they seek are "identical" to those previously disclosed. The government's memorandum does not even address the Court's question: whether ICE's history of releasing the same information demonstrates that the claim of exemption is *invalid* because further releases would not pose a reasonable risk of harm. The government's focus on waiver merely assumes that the answer to that question is favorable to its position, because waiver is only dispositive if the records sought are exempt.

On the question posed by the Court, the government's submission does nothing to advance its case. The government's claim that it "inadvertently" produced records containing "metadata" such as names of database fields and tables and other information from database schema is meritless. The contrast between this case and the ones the government cites, in which agencies unknowingly released a handful of exempt materials, could hardly be more striking. In *Hersh & Hersh v. U.S. Dep't of Health & Human Services*, 2008 WL 901539 (N.D. Cal. 2008), the agency was not even aware it had produced the documents until the plaintiffs attached them to a motion. *See id*. at *9. In *Kay v. FCC*, 867 F. Supp. 11 (D.D.C. 1994), an agency employee set aside six documents for redaction but, in a "clerical error," produced unredacted copies because she did not notice that the copies were attached to other documents. *Id* at 23–24.

As the attached Fourth Declaration of Susan B. Long explains, this case is not about isolated, unknowing productions of a few records, to which the agency put a stop once it learned of the releases. Rather, the agency has produced information that it now claims is exempt in large quantities over the course of nearly a decade. Fourth Long Dec. ¶¶ 2–3. There can be no suggestion that the agency did not know what it was producing. Many of the productions came only af-

ter appeals to the head of the agency, decided by ICE's Office of the Principal Legal Adviser. *Id*. ¶ 4. Moreover, releases of such material were prepared by the Law Enforcement and Systems Analysis (LESA) office in which the government's declarant, Mr. Wilson, serves, and which he says has "equities" in the information (Wilson 2017 Dec. ¶ 7). *See* Fourth Long Dec. ¶ 5.

At most, Mr. Wilson's declaration establishes that an employee of the agency was not aware of the extent of the agency's production of records and disagreed with the agency's previous decisions to release such information once he learned of it. Even then, the production of large amounts of material that the agency now claims are actually exempt did not stop, but, as Professor Long explains, continues to this day in response to some of TRAC's requests. *Id*. ¶ 12. And even as to the requests in this case, Mr. Wilson's claimed discovery of his agency's "inadvertent" releases did not immediately translate into action. ICE did not deny the key request in this case on exemption 7(E) grounds or assert its broad construction of the exemption in its initial Vaughn index. *See id*. ¶ 6. It did not articulate its view until its filing of its summary judgment papers and supplemental Vaughn index.

Thus, contrary to its belatedly arrived-at litigation position in this case, ICE has over a number of years knowingly and advisedly produced large volumes of information it now says is subject to exemption 7(E). And although the government attempts to minimize the degree of that production of material, it does not contend that the releases are reconcilable with its position in this case. Indeed, the government's declarant admits that the release of the material contradicts the agency's current litigation position. Wilson 2017 Dec. ¶ 8.

Nonetheless, on the Court's question—whether the large-scale, deliberate releases of materials by the agency indicate that the releases sought here do not actually pose a reasonable risk of a breach—the government's supplemental brief punts. The government does not suggest that

the releases that have occurred to date have caused any harm, or that its regular audits of database access have shown any suspicious activity in any way connected with its release to TRAC of information about the contents of the database. Nor does the government cite any authority to contradict the common-sense inference that if an agency knowingly releases materials over a number of years (consistent with practices of other enforcement agencies that regularly reveal metadata detailing the contents of their databases), it is unlikely that those releases in fact pose a reasonable risk of harm or that continuation of the same type of releases will suddenly result in harms that have not yet shown any hint of materializing.

Instead, the government talks only about whether its releases technically give rise to a waiver of claims of exemption to the records sought in this case. Waiver, however, is a ground on which a FOIA plaintiff may seek release of a record that would otherwise be subject to a valid claim of exemption. *See Public Citizen v. Dep't of State*, 11 F.3d 198 (D.C. Cir. 1993) (considering whether agency "*waived* its right to assert" exemptions that the plaintiff "d[id] not dispute" were otherwise applicable). Here, by contrast, the issue is whether the government has established a prerequisite to application of the claimed exemption—that "disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Although a plaintiff must "bear the initial burden" of establishing waiver of a valid exemption, "an agency bears the burden of proving that a FOIA exemption applies to a given document." *Public Citizen*, 11 F.3d at 201 (citing *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983)).

The line of precedents the government invokes holds only that that establishing waiver of an otherwise proper claim of exemption requires the plaintiff to show that the specific information in the records sought is the same as information previously released. *See, e.g., Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 60-61 (D.C. Cir. 2003); *Public Citizen*, 11

F.3d at 201; *Afshar*, 702 F.2d at 1129–30. Those precedents have no application to the question whether a long history of releases of the same type of material undercuts a claim that there is a reasonable expectation of harm if the releases continue. As to that question, the government has defaulted even when the Court has given it yet another chance to carry the burden of establishing its claims of exemption, as it must do to avoid summary judgment for the plaintiffs.

Even if the issue were one of waiver, the government's arguments would fall short of the mark. Contrary to the government's assertion, the controlling D.C. Circuit opinions that define the waiver doctrine in the FOIA context do not require a FOIA plaintiff to demonstrate that the exact document sought under FOIA has previously been released. Rather, the cases require a showing that there is "specific *information* in the public domain that appears to duplicate that being withheld" in the requested records. *Afshar*, 702 F.2d at 1130 (emphasis added); *see also Public Citizen*, 11 F.3d at 201; *Assassination Archives*, 334 F.3d at 60. Here, the agency's prior releases of names and descriptions of fields, tables and other information in the database schema undoubtedly are "as specific as" and "match[]" assertedly exempt information in the records being withheld. *Id*. at 60; *see* Fourth Long Dec. ¶¶ 11–15. Likewise, the information in the document created by the agency to respond to plaintiffs' request for information about the creation of snapshots (First Long Dec., Exh. F) quite evidently "duplicates" the information in the withheld documents that served as the source for its creation. Of course, plaintiffs cannot identify the exact withheld records that duplicate the information already produced because the government's Vaughn index for the most part does not specifically identify documents withheld, but instead only describes broad categories of records. *See* Fourth Long Dec. ¶ 14. *Afshar* and its progeny, however, do not require plaintiffs to do the impossible, but only to show that previously disclosed information "appears to duplicate" that in the records withheld. *Afshar*, 702 F.2d at 1130.

Fundamentally, though, this case is not about waiver. Plaintiffs' objective is not to obtain information they already have. Rather, they seek critically important information about the contents of government databases so that they and other members of the public can obtain meaningful access to the non-exempt information they contain. The government's assertion that information describing what kind of non-exempt information is in its databases is somehow itself exempt stands as a huge obstacle to such access. *See* Fourth Long Dec. ¶¶ 7–10. That the agency has for many years produced exactly such information, and even continues to do so in response to other requests, *see id.* ¶ 12, is powerful evidence—together with other evidence in the record of this case—that the government has failed to meet its burden of showing that the release of additional information of the same kind would be reasonably expected to risk circumvention of the law. The government's most recent failure even to address the issue when given yet another chance to do so only underscores its failure to carry its burden.

## CONCLUSION

For the foregoing reasons, as well as those set forth in plaintiffs' previous submissions, defendants' motion for summary judgment as to the application of exemption 7(E) to the database schema and other metadata at issue, as well as with respect to the plaintiffs' request for records identifying and providing information about the creation of snapshots, should be denied. The plaintiffs' cross-motion for summary judgment on those issues should be granted.

/s/ Scott L. Nelson
Scott L. Nelson
DC Bar No. 413548
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

March 10, 2017                              *Counsel for Plaintiffs*

- 7 -

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing supplemental memorandum was served on counsel for the defendants via the court's electronic filing system on March 10, 2017.

/s/ Scott L. Nelson
Scott L. Nelson
